**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**ALISON ENDICOTT-QUIÑONES,**
**Guardian Ad Litem, on behalf of B.R.**

     **Plaintiff,**

**v.**                                                                                   **Case No.**

**NEW MEXICO CHILDREN,**
**YOUTH & FAMILY DEPARTMENT,**
**YOUTH DEVELOPMENT, INC., AND**
**HOPE HOUSE JOHN DOES 1-10**
**in their individual capacities,**

     **Defendants.**

## **COMPLAINT**

B.R., through her guardian ad litem Alison Endicott-Quiñones ("Plaintiff"), files this Complaint against Defendants New Mexico Children, Youth & Family Department ("CYFD"), Youth Development, Inc. ("YDI"), and HOPE House John Does 1-10 ("HOPE House Does") (collectively, "Defendants").

## **Overview**

1.     This case concerns another horrific incident caused by the incompetence and downright malevolence of CYFD—this time enabled by the negligence of a non-profit called YDI. In short, CYFD and YDI permitted a 14-year old girl to wander off alone from "HOPE House," an Albuquerque group home for girls in state custody.  The group home employees took no steps to keep her from leaving, and failed to do anything to find her after she left.  Eventually, a rapist used his status as an Uber driver to lure her into his car, take her to a hotel, brandish a gun, drug her, and rape her until she bled.

1

2.      The Uber driver took the girl back to the group home and dumped her on the sidewalk around 2:00 A.M.  Dazed from the drugs and cold from the January temperatures, the girl tried to get into the group home, but HOPE House staff refused her entry. They tossed her a blanket and left her out in the cold as punishment for running away.  Much later, the girl obtained medical treatment and disclosed to her doctor that she had been drugged and raped.  Yet HOPE House never called Statewide Central Intake as required.

3.      The above events constitute startling misconduct by Defendants.  Via her guardian ad litem, the girl in question, B.R., brings this Complaint and seeks damages for the physical injuries and mental anguish she has suffered, as well as punitive damages, attorneys' fees, and all other damages permitted by law.

## Parties, Jurisdiction, and Venue

4.      Plaintiff B.R. is a minor child currently residing in Bernalillo County, New Mexico. Her name is abbreviated in this Complaint to protect her privacy.  B.R. is, and was at all relevant times, in CYFD's custody.

5.      Alison Endicott-Quiñones is a guardian ad litem appointed by a New Mexico state district court to represent B.R.  She resides in Bernalillo County, New Mexico.

6.      Defendant CYFD is a subsidiary of the State of New Mexico. It is responsible for providing child protective services to children in New Mexico.

7.      Defendant Youth Development, Inc. is a New Mexico non-profit corporation with its principal place of business in New Mexico.  It may be served via its registered agent at:  Robert Chavez, 3411 Candelaria Rd NE, Suite J, 3411 Candelaria Rd NE, Suite J, Albuquerque, NM 87107.

8.     HOPE House John Does 1-10 are the CYFD and Youth Development, Inc. employees responsible for the operation of HOPE House and protection of Plaintiff. On information and belief, they reside in Bernalillo County, New Mexico.  They are sued in their individual capacities.  Plaintiff will file an amended complaint once their identities are ascertained.

9.     Jurisdiction is proper in New Mexico as all, or substantially all, facts giving rise to Plaintiffs' claims occurred in New Mexico and all parties reside in New Mexico.

10.     Venue is proper because all or substantially all facts giving rise to Plaintiff's claims occurred in Bernalillo County, New Mexico.

**Factual Allegations**

**A.     CYFD opens "HOPE House" as a Band-Aid fix for the broken New Mexico foster care system.**

11.     CYFD is a failed state agency that takes custody of New Mexico's most vulnerable children, and then habitually fails to provide them with the most basic care or safety.

12.     New Mexico's governor has admitted CYFD is "dysfunctional," and an independent monitor has recently described CYFD as in a "state of chaos."

13.     Most recently, the Attorney General of New Mexico announced an investigation into CYFD after a 16-year old killed himself at a different CYFD Albuquerque group home.

14.     The Attorney General Office stated, "I think we have all grown tired of waking up and hearing about another child who's been injured, another child who's been hurt, another child in state custody who's been killed."

15.     A symptom of CYFD's dysfunction is that it often houses children in manifestly unsafe and improper conditions, such as conference rooms in CYFD office buildings.

16.     To alleviate this embarrassing problem, CYFD opened HOPE House in December of 2024 to take some of the overflow from the office.

17.     HOPE House was for girls, only, and could hold around 10 girls at a time. It has around seven bedrooms and three bathrooms. It is located in Bernalillo County, New Mexico.

18.     CYFD intended HOPE House to be a "bridge" and "temporary" while CYFD "buil[t] out capacity within [the] foster care system."

19.     HOPE House acquired its license to operate around December 10, 2024, and began housing girls on December 12, 2024.

20.     YDI operates HOPE House on a one-year, $1.5 million contract with CYFD.

21.     Then-CYFD Secretary, Teresa Casados, was responsible for entering this contract with YDI.

22.     In December 2024, the number of girls who stayed at HOPE House was limited to three, as YDI had yet to hire sufficient staff.

23.     By mid-January 2025, four girls stayed at HOPE House.

24.     Around that time, the CEO of YDI stated in an interview that by the end of January 2025, YDI hoped to have sufficient staff to reach the full capacity of 10.

**B.     Plaintiff is assigned to HOPE House.**

25.     B.R. is a female who was around 14 years old at the time of the events described herein.

26.     B.R. has been in CYFD's custody for some time. Prior to coming into CYFD's custody, B.R. had been at a treatment center in Texas. B.R. was in a treatment center and not a group home because Texas' caretakers thought it was therapeutically inappropriate for B.R. to be in a group home.

27.     B.R. has described herself as "good at school" and "resilient," and she dreams of one day being a law enforcement agent.

28.     In late 2024 or early 2025, CYFD assigned B.R. to HOPE House.

**C.     B.R. walks away from HOPE House.**

29.     Conditions at HOPE House were difficult for B.R.

30.     B.R. had personal conflict with other residents.

31.     On information and belief, YDI and CYFD failed to provide sufficient services or supervision to help B.R.

32.     On information and belief, under pressure from CYFD, YDI had rushed into taking more children than it could handle with staffing that was very thin.

33.     On information and belief, the inadequate staffing and a lackadaisical attitude towards safety by the HOPE House Does created a situation where HOPE House residents could run away at any time.

34.     When residents did run away, the inadequate staffing and lackadaisical attitude towards safety meant that law enforcement would not be alerted in a timely fashion (or at all) about runaways.

35.     On or around January 29, 2025, due to the stressful conditions at HOPE House, B.R. left HOPE House and started wandering around.

36.     She was gone at least several hours.  On information and belief, during this time, the HOPE House Does failed to contact law enforcement or make any other effort to locate B.R.

37.     On information and belief, the location of HOPE House is well-known among sexual predators in Albuquerque. They frequent the area like vultures circling a carcass, waiting for victims to leave the building.

38.    Since HOPE House opened, three girls—including Plaintiff—have been abducted and sexually assaulted.

**D.    Plaintiff is picked up by an Uber driver, drugged, and raped.**

39.    Sometime after running away from HOPE House, Plaintiff was picked up by Doe Uber Driver.

40.    Doe Uber Driver was a black man around 30 years old named Andrew or Andre.

41.    At the time he picked up Plaintiff, Doe Uber Driver held himself out as a driver for the Uber platform.

42.    After a while, Doe Uber Driver suggested to Plaintiff that he would protect her by getting her off the street and taking her to a hotel, which Doe Uber Driver proceeded to do.

43.    Once in the hotel, Doe Uber Driver gave drugs to Plaintiff.

44.    Doe Uber Driver told Plaintiff the drugs were marijuana, but on information and belief they were a date rape drug.

45.    Doe Uber Driver also brandished a gun toward B.R.

46.    Plaintiff consumed the drugs and became very dazed and groggy.

47.    Doe Uber Driver had sex with Plaintiff against her will until she started bleeding.

48.    Once Plaintiff started bleeding, Doe Uber Driver took Plaintiff back to HOPE House, where Plaintiff had told Doe Uber Driver she lived.

**E.    Plaintiff is refused entry by the HOPE House Does.**

49.    Doe Uber Driver dropped Plaintiff off at HOPE House around 2:00 A.M., early on January 30, 2025.

50.    Plaintiff tried to enter HOPE House because she was cold, bleeding, and still in a daze from the date rape drug.

51.    One of the HOPE House Does prevented Plaintiff from getting into HOPE House, telling her she had to stay outside as punishment for running away.

52.    The HOPE House Doe gave Plaintiff a small blanket.

53.    The HOPE House Doe called Plaintiff's case worker from CYFD.

54.    Plaintiff was outside in the cold for around 40 minutes until the CYFD worker arrived.

55.    The CYFD worker took Plaintiff to a hospital due to required protocol.

56.    At the hospital, Plaintiff told a doctor about being drugged and raped by Doe Uber Driver, at which point the hospital contacted law enforcement.

57.    In analyzing B.R.'s injuries from the rape, the Albuquerque Police Department ("APD") mistakenly treated B.R. as an adult, not a child.  The CYFD worker did not correct the APD in this regard.  As a result, B.R. received a more invasive examination than is typical for a child rape victim.

58.    Since the time of the incident, CYFD failed to adequately follow up with law enforcement to identify and apprehend the Doe Uber Driver.

59.    CYFD also failed to adequately follow up with medical providers to ensure B.R. received treatment for her injuries.  Indeed, one of B.R.'s medical providers had to separately contact B.R.'s guardian ad litem to make sure B.R. was receiving proper medical treatment after the assault.

60.    B.R. has experienced damages from the above events in the form of, at a minimum, bodily injury and mental anguish.  B.R. will have to undergo future physical and psychological care as a result of these events.

## FIRST CAUSE OF ACTION

### Violation of the Fourteenth Amendment – Special Relationship
### 42 U.S.C. § 1983
### (Against the HOPE House Does, in their individual and official capacities)

61.    Plaintiff incorporates all prior paragraphs as if fully set forth herein.

62.    The HOPE House Does are persons for purposes of 42 U.S.C. § 1983.

63.    The Fourteenth Amendment of the United States Constitution vested B.R. with a clearly established procedural and substantive due process right to be protected by CYFD while in State custody.

64.    CYFD policy defines "legal custody" as:

> [A] legal status created by order of the children's court or other court of competent jurisdiction or by operation of the New Mexico Children's Code, Section 32A-4-1 et seq or 32A-3B-1 et seq, NMSA 1978, that vests in a person, department or agency the: (1) right to determine where and with whom a child shall live; (2) right and duty to protect, train and discipline the child and to provide the child with food, shelter, personal care, education and ordinary and emergency medical care; (3) right to consent to major medical, psychiatric, psychological and surgical treatment and to the administration of legally prescribed psychotropic medications pursuant to the Children's Mental Health and Developmental Disabilities Act; and (4) right to consent to the child's enlistment in the armed forces of the United States.

65.    N.M. Admin. Code 8.10.7.7(X)(emphasis added). This policy, which imposes affirmative duties on CYFD employees to protect B.R., was continuously in force and effect during the relevant events.

66.    A special relationship existed between the HOPE House Does and B.R.

67.    The HOPE House Does violated the duties created by the special relationship in multiple ways.

68.    The HOPE House Does failed to adequately monitor B.R. or the operation of HOPE House.

69.     The HOPE House Does failed to ensure B.R. was properly monitored and that she could not walk away on to the dangerous streets of Albuquerque where there was a high probability she would be preyed upon.

70.     Once B.R. left HOPE House, the HOPE House Does failed to take reasonable steps to locate B.R. or otherwise provide for her protection.

71.     Once B.R. returned to HOPE House, the HOPE House Does failed to ensure that she would be cared for then, too.

72.     Due to the HOPE House Does' actions and omissions, failures, B.R. has experienced physical injuries in the form of being drugged and raped, and being forced to sit outside in the cold for 40 minutes in a drug-induced haze while bleeding, as well as other damages post-incident as alleged above.

73.     The HOPE House Does acted under color of law, within the scope of their duties as state actors.

74.     B.R. has continued to experience severe mental anguish due to the incident at issue.

75.     The HOPE House Does acted with malice such that punitive damages are appropriate.

### SECOND CAUSE OF ACTION

**New Mexico Tort Claim Act**
**NMSA 1978, § 41-4-1 et seq.**
**(Against CYFD and HOPE House Does)**

76.     Plaintiff incorporates all prior paragraphs as if fully set forth herein.

77.     At all times CYFD and the HOPE House Does were responsible for providing Plaintiff a safe living place.

78.    CYFD and the HOPE House Does decided where B.R. would live and under what conditions.

79.    CYFD and the HOPE House Does decided to house B.R. at HOPE House, under the supervision of YDI.

80.    For the above reasons, this decision by CYFD constituted a breach of its duty to Plaintiff.

81.    As a proximate result of CYFD's actions, B.R. was kidnapped, drugged, and raped, and she was forced to stay out in the cold for an extended period of time.

82.    As a result, B.R. has suffered damages as alleged above.

83.    Plaintiff has provided adequate notice as required under New Mexico law.

84.    Plaintiff is entitled to damages, including actual damages.

### THIRD CAUSE OF ACTION

**New Mexico Civil Rights Act**
**NMSA 1978, § 41-4A-3**
**(Against CYFD)**

85.    Plaintiff incorporates all prior paragraphs as if fully set forth herein.

86.    The New Mexico Constitution guarantees rights including due process, equal protection, and happiness.

87.    CYFD deprived B.R. of rights, privileges, or immunities secured by the New Mexico Constitution through its neglect and failure to provide B.R. with a safe living condition, and failure to adequately monitor B.R. or take efforts to locate her when she went missing.

88.    The deprivation of B.R.'s rights proximately caused her to suffer damages including pain, suffering, emotional distress, bodily injury, and loss of enjoyment of life.

89.    Plaintiff has provided adequate notice as required under New Mexico law.

## FOURTH CAUSE OF ACTION

### Negligence
### (Against YDI)

90.     Plaintiff incorporates all prior paragraphs as if fully set forth herein.

91.     YDI owed a duty to, at a minimum, adequately supervise B.R. and keep B.R. safe.

92.     YDI breached that duty by, inter alia, failing to monitor and locate B.R., and failing to provide proper care for her once B.R. had returned to HOPE House.

93.     YDI's breach of its duty was the proximate and cause-in-fact of Plaintiff's injuries and damages.

## PRAYER FOR RELIEF

Plaintiff prays that judgment be entered against Defendants as follows:

a.  For general and special damages according to proof;

b.  For punitive damages according to proof;

c.  For costs of suit;

d.  For attorneys' fees;

e.  For pre-judgment interest; and

f.  For such other and further relief as the Court may deem just and proper.

Date: January 23, 2026

**WGLA, LLP**

By:_____/s/ Curtis Waldo_____
Benjamin Gubernick
New Mexico Bar No. 145006
ben@wglawllp.com
Curtis Waldo
New Mexico Bar No. 163604
curtis@wglawllp.com
Telephone (346) 394-8056
717 Texas St. Suite 1200
Houston, TX 77002